**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

THE LANE CONSTRUCTION
CORPORATION,

      Plaintiff,

v.                                                                                Case No. 6:21-cv-164-RBD-DCI

SKANSKA USA CIVIL
SOUTHEAST, INC.; and GRANITE
CONSTRUCTION COMPANY,

      Defendants,

v.

SALINI IMPREGILO S.P.A. n/k/a
WEBUILD S.P.A. INC.; and
SKANSKA-GRANITE-LANE,

      Third-Party Defendants.
_____

**<u>ORDER</u>**

      This cause is before the Court on several pending matters concerning the

pleadings in this case.

      This highly litigated case needs little table-setting. Briefly, this case arises

out of a joint venture formed by Defendant Skanska USA Civil Southeast, Inc.

("Skanska"), intervenor Defendant Granite Construction Company ("Granite"),

and Plaintiff The Lane Construction Corporation ("Lane"); the joint venture itself,

Skanska-Granite-Lane ("SGL"), is also a Third-Party Defendant to this case. (Docs. 1, 57, 71.) SGL was formed to work on the I4 Ultimate highway project. (Doc. 1, *passim*.) Lane contends that, when the project was delayed, SGL had a contractual right to compel termination, but Skanska—SGL's managing partner— refused due to a purported conflict of interest. (*Id.*) So Lane sued Skanska for breach of fiduciary duty, gross negligence, and a declaration that Lane need not contribute to SGL's working capital call as the project continues. (*Id.*) Skanska counterclaimed against Lane for the same; it also impled SGL, which then filed a crossclaim against Lane. (Docs. 57, 97, 143.)

With this background, the Court takes each pending matter concerning the pleadings in turn.

## I.   Skanska's Counterclaim Against Lane

First up is Skanska's amended counterclaim against Lane. Skanska's original counterclaim contained breach of fiduciary duty and gross negligence claims predicated on Lane bringing this lawsuit and essentially airing the joint venture's dirty laundry via litigation. (Doc. 57.) The Court dismissed those claims on the basis of the litigation privilege and allowed Skanska to replead them without reference to privileged conduct—if it could colorably do so. (Doc. 127.)

Despite the Court's skepticism, Skanska repled the claims. (Doc. 143.) Lane has again moved to dismiss them. (Doc. 173 ("Motion to Dismiss Counterclaim");

*see* Doc. 182.) Lane's motion is again well-taken.

Skanska's counterclaim attempts to point the finger back at Lane and accuse it of the same misconduct of which Lane accused Skanska: answering to the interests of a parent company disaligned with the joint venture. (*See* Doc. 143, ¶ 119.) But while Lane's complaint plausibly alleged that Skanska was beholden to continue the project to the detriment of the joint venture because its parent company owned the concessionaire running the whole project, Skanska cannot claim the same; it alleges no plausible factual basis for why Lane's parent would want to harm the joint venture when Lane was a participant standing to gain and lose just as the joint venture gained and lost. (*See* Doc. 173, p. 9.) Skanska's claims are predicated on the allegation that "Lane was motivated [to] exit[] the Project [by] the incorrect belief that it could avoid ongoing loss." (Doc. 143, ¶ 51.) But as Lane rightly notes, "the only cost overruns that [Lane and its parent company] faced were SGL's cost overruns." (Doc. 173, p. 10.) Given the lack of any coherent explanation for why Lane or its parent would want to harm the interests of the joint venture, or how they were disaligned, Skanska has not plausibly established that Lane's actions in attempting to stop the project breached any duty to the joint venture itself or to its partner.[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A

---

[1] Both of Skanska's claims require plausible allegations of breach and damages. *See Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 246 F. Supp. 3d 1329, 1332 (M.D. Fla. 2017); *Rutkowski v. City of Titusville*, No. 6:15-cv-454, 2015 WL 5254311, at *2, *4 (M.D. Fla. Sept. 9, 2015).

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also Smith v. Ceres Marine Terminals, Inc.*, No. 6:20-cv-1666, 2021 WL 3111614, at *2 (M.D. Fla. Mar. 31, 2021) (holding that gross negligence claim was not plausibly alleged where the plaintiff failed to plead specific facts to show the defendant knew its conduct was wrong and consciously disregarded negative consequences); *cf. Kurlander v. Kaplan*, No. 8:19-cv-644, 2019 WL 3944335, at *6 (M.D. Fla. Aug. 21, 2019) (noting that loyalty issues arise when a party stands on both sides of a transaction, and holding that breach of fiduciary duty claim was not plausibly alleged).

Nor has Skanska alleged sufficient facts to plausibly establish that it suffered damages caused by Lane's actions. While Skanska's first iteration of the counterclaim was replete with allegations that Lane harmed Skanska directly by airing the project's dirty laundry (*see* Doc. 57), once Skanska removed those offending privileged allegations, it is left with only the bare assertion that Lane's dissent delayed the joint venture's agreement with the government to continue the project. (Doc. 143, ¶ 130.) But Lane's attempt to stop the project did not stop the project—because Skanska, not Lane, is the managing partner. And Skanska

4

characterizes the agreement to continue the project in glowing terms—a "$125 Million benefit," extension of time, and "significant reduction" in exposure. (*See* Doc. 182, p. 3.) So how was Skanska damaged? Other than having to save face because Lane made the dispute public (*see* Doc. 143, ¶ 130)—which the Court has warned is not actionable—Skanska does not explain. With no plausible explanation of how Lane's actions damaged Skanska, Skanska cannot state its claims. *See Craig Mcalpine, Vpma1, Inc. v. Dr.ing.hc.f.porsche A.G.*, No. 2:11-cv-618, 2013 WL 12167926, at *6 (M.D. Fla. Mar. 27, 2013).

With no plausible allegations of breach or damages, Skanska's claims for breach of fiduciary duty and gross negligence do not survive. So Lane's Motion to Dismiss Counterclaim (Doc. 173) is **GRANTED**. Counts IV and V of Skanska's amended counterclaim (Doc. 143) are **DISMISSED**.

## II.  SGL's Crossclaim Against Lane

Next up is SGL's amended crossclaim against Lane. Lane previously challenged SGL's original crossclaim (Doc. 97). (Doc. 112.) The Court denied that motion, and Lane answered. (Docs. 127, 147.) Strangely, Lane then moved to dismiss the original crossclaim again (Doc. 161 ("Motion to Dismiss Crossclaim")), *before* SGL amended its crossclaim (Doc. 165). (*See also* Doc. 177, p. 5 n.3.) So this motion is both barred by Rule 12's prohibition on successive motions directed to the same pleading and mooted by the filing of the amended counterclaim.

But even if the Court were to consider the motion's merits, it would fail. Lane's newest theory, absent from its original challenge (*see* Doc. 112), is that Skanska and SGL are wholly aligned, so there is no case or controversy between them to support jurisdiction over Skanska's claim against SGL; and because Skanska's claim is how SGL got into this suit, the Court also lacks jurisdiction over SGL's crossclaim against Lane. (Doc. 161.)

This convoluted theory is fatally flawed. The Court has already determined that SGL was properly joined and that it is its own entity vested with its own rights under the disputed joint venture agreement ("JVA"). (*See* Docs. 127, 147.) Given that SGL seeks to vindicate those rights via its claim against Lane, the Court has jurisdiction over that claim along with all the other claims concerning the joint venture. *See* 28 U.S.C. § 1367.

And as to Skanska's claim against SGL, it (like all the others) seeks a declaration as to the parties' obligations under the JVA. (Docs. 57, 143.) So there can be no serious question that the claim concerns a matter very much in real dispute; indeed, the parties' obligations under the JVA is the *central* matter in dispute for all of the parties. (*See* Doc. 177.) As such, Skanska's claim plainly presents a live controversy for the Court's consideration. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (holding that a controversy need only be "definite and concrete" and "real and substantial" (cleaned up)); *cf. Provident Life*

*& Acc. Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988) ("Courts have found the case or controversy requirement lacking when the plaintiff has no interest in the case, when the defendant has no interest in the case, when no conflict exists in the case, when there is no adverse claimant, when there is no conflict in the case because of a defect in the parties and when there is no legal relationship between the parties."). So even if the Court's jurisdiction over SGL's crossclaim depended on Skanska's counterclaim (which it does not), the claim would survive.

Accordingly, Lane's Motion to Dismiss Crossclaim (Doc. 161) is **DENIED**.

### III.  Lane's Affirmative Defenses to SGL's Crossclaim

Finally, the Court turns to Lane's affirmative defenses to SGL's crossclaim. SGL moved to strike several of those defenses, specifically: subject matter jurisdiction; the defense that Skanska's breaches excused Lane's; setoff; judicial estoppel; and claim-splitting (Doc. 147). (Doc. 170 ("Motion to Strike"); *see* Doc. 179.)

U.S. Magistrate Judge Daniel C. Irick entered a Report and Recommendation submitting that Court should grant SGL's motion to strike in part. (Doc. 188 ("R&R").) Specifically, Judge Irick recommended: (1) subject matter jurisdiction is not an affirmative defense and is properly raised via the motion to dismiss, so it should be stricken; (2) the breach and setoff defenses raise factual

issues, so they should not be stricken; (3) the judicial estoppel defense should not be stricken because it is satisfactorily pled and not wholly mooted, given that the underlying state case may be refiled; and (4) the claim-splitting defense should be stricken because the Court has already ruled on that issue. (*Id.*)

SGL objected to the portion of the R&R recommending that the Court decline to strike the breach, setoff, and judicial estoppel defenses. (Doc. 189 ("Objection"); *see* Doc. 202.) But SGL's Objection merely rehashes the arguments it made before Judge Irick, which he correctly rejected; the breach and setoff issues cannot be resolved at this stage and the judicial estoppel defense is sufficient to survive for now. (*See* Doc. 188. *Compare* Doc. 170, pp. 9–21, *with* Doc. 189, pp. 7–19.) So after an independent *de novo* review of the record, the Court agrees entirely with Judge Irick's thorough and well-reasoned R&R. *See* 28 U.S.C. § 636(b)(1); *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

As such, SGL's Objection (Doc. 189) is **OVERRULED**, and Judge Irick's R&R (Doc. 188) is **ADOPTED AND CONFIRMED**. SGL's Motion to Strike (Doc. 170) is **GRANTED IN PART AND DENIED IN PART**: the Motion is **GRANTED** insofar as Lane's First and Eighth Affirmative Defenses (Doc. 147) are **STRICKEN**, and it is otherwise **DENIED**.

**IT IS SO ORDERED**.

8

**DONE AND ORDERED** in Chambers in Orlando, Florida, on September

12, 2022.

ROY B. DALTON JR.
United States District Judge